UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNION ELECTRIC COMPANY d/b/a AMEREN MISSOURI, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:11-CV-299 (CEJ) |
| | ) | |
| CABLE ONE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion to dismiss or, in the alternative, to stay proceedings in deference to the Federal Communications Commission's primary jurisdiction.  Plaintiff opposes defendant's motion, and the issues have been fully briefed.

### I.   Background

Plaintiff owns utility poles throughout the State of Missouri.  Defendant provides residential and commercial cable television and Internet services.  Access to utilities poles by cable and telecommunications service providers is governed by the Pole Attachment Act, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 224.  Section 224 confers upon the FCC regulatory authority over the access terms and rates in agreements between utility pole owners and cable and telecommunication service providers in the absence of state regulation.

Plaintiff and defendant are parties to a "Master Facilities Licensing Agreement," effective June 17, 2003, pursuant to § 224.  The agreement allows defendant to install its network equipment on plaintiff's utility poles.   In return, defendant pays fees to

plaintiff based upon the number and classification of each pole attachment it installs. Under the agreement, an attachment is classified as either a cable television (CATV) attachment or a telecommunications attachment, depending on the type of service provided through the attachment.  The rate the defendant is required to pay for a telecommunications attachment is substantially higher than the rate it pays for attachments classified as for CATV use.

Plaintiff's complaint alleges that defendant breached the parties' agreement by providing telecommunication services through attachments that were reported by defendant to be CATV attachments.  Plaintiff claims that defendant owes additional fees for each improperly designated attachment and penalties, as provided in the agreement, for failing to notify plaintiff of the improperly reported attachments. Specifically, plaintiff claims that defendant is offering voice over internet protocol (VoIP) telephone service, dedicated line data transport services, and E-rate services through attachments reported as for CATV use.  Plaintiff claims that at least some of these services meet the definition of telecommunications services based on the FCC's interpretation of Sections 224 and 153.  See 47 U.S.C. § 153(50).[1]

In the instant motion, defendant asks that the Court dismiss or stay proceedings in this matter under the doctrine of primary jurisdiction, in deference to the FCC's regulatory authority under 47 U.S.C. § 224.  Defendant disputes that the services it offers are telecommunications services as defined in Section 224 and states that the issue of service classification should be referred to the FCC.  Plaintiff argues that this

---

[1]  "The term 'telecommunications' means the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received."  47 U.S.C. § 153(50).

matter is a simple contract dispute that does not raise technical issues that warrant consideration by the FCC or the application of the primary jurisdiction doctrine.

## II.   Legal Standard

Primary jurisdiction is a common-law doctrine that is utilized to coordinate judicial and administrative decision making.   Access Telecommunications v. Southwestern Bell Telephone Co., 137 F.3d 605, 608 (8th Cir. 1998). The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 938 (8th Cir. 2005) (internal citation omitted).

There is no fixed formula for deciding whether to apply the doctrine of primary jurisdiction. Access, 137 F.3d at 608. Rather, the applicability of the doctrine in any given case depends on "whether the reasons for the doctrine are present and whether applying the doctrine will aid the purposes for which the doctrine was created." Id. Deferral to an agency determination is appropriate where (1) "the use of agency expertise in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion" and (2) the "promot[ion] of uniformity and consistency within the particular field of regulation." Alpharma, 411 F.3d at 938 (internal quotation omitted); Access, 137 F.3d at 608. The Eighth Circuit warns that the doctrine "is to be 'invoked sparingly, as it often results in added expense and delay.' " Alpharma, 411 F.3d at 938 (quoting Red Lake Band of Chippewa Indians v. Barlow, 846 F.2d 474, 477 (8th Cir.1988)).   Finally, "[i]t is inappropriate to invoke the doctrine of primary jurisdiction in a case in which Congress,

by statute, has decided that the courts should consider the issue in the first instance."
United States v. McDonnell Douglas Corp., 751 F.2d 220 (8th Cir. 1984) (internal
citation omitted).

When the primary jurisdiction doctrine applies, the "district court has discretion
either to [stay the case and] retain jurisdiction or, if the parties would not be unfairly
disadvantaged, to dismiss the case without prejudice." Access, 137 F.3d at 609 (*citing*
Reiter v. Cooper, 507 U.S. 258, 269 (1993)).

### III.   Discussion

The rules promulgated by the FCC under Section 224 "regulate the rates, terms,
and conditions for pole attachments" and the FCC has jurisdiction to determine
whether an agreement provides for "just, reasonable, and nondiscriminatory rates for
such pole attachments." 47 U.S.C. § 224; Virginia Electric and Power Co. v. Comcast
of Virginia, Inc., Slip Copy, 2010 WL 916953 (E.D. Va. 2010).  Section 224 does not
preempt state law and will govern utility pole access only in the absence of a state
regulatory scheme.  47 U.S.C. § 244(b) and (c).  Missouri has declined to provide a
regulatory scheme governing utility pole access. See States That Have Certified that
They Regulate Pole Attachments, 25 FCCR 5541, 5541–42 (2010).  As such, the
parties' agreement is subject to regulation by the FCC under Section 224.  47 U.S.C.
§ 224.

The terms "telecommunications" and "telecommunications services," as used in
Section 224, are defined in 47 U.S.C. § 153.  The classification of services, *i.e.* whether
they are telecommunications services or information services, raises issues of a
technical nature that are often decided under the FCC's agency complaint process. See
Minnesota Public Utilities Commission v. FCC, 483 F.3d 570 (8th Cir. 2007).  For

example, cable broadband internet has been classified as an information service, not a telecommunications service or cable service as defined in 47 U.S.C. § 153.  National Cable & Telecommunications Ass'n v. Brand X Internet Services, 545 U.S. 967 (2005) (upholding the FCC's service classification determination as reasonable under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)). "Nomadic" VoIP has also been deemed an information service.  Public Service Co. of Colorado v. F.C.C., 328 F.3d 675 (D.C. Cir. 2003).  However, an IP-based prepaid calling card service is considered a telecommunications service.  American Telephone and Telegraph Co. v. F.C.C., 454 F.3d 329, 372 (D.C. Cir. 2006).  It is also notable that the FCC's regulatory jurisdiction over pole attachments extends to attachments that are not considered for CATV or telecommunications services (e.g., information services) so long as the entity attaching the equipment is considered a CATV or telecommunications service provider.  National Cable & Telecommunications Ass'n, Inc. v. Gulf Power Co., 534 U.S. 327 (2002).

Despite the fact that its claim relies upon the classification of defendant's services, plaintiff maintains that its claim is not the type of dispute subject to the FCC's primary jurisdiction. Plaintiff claims that defendant is offering telecommunications services, but has not alleged any specific facts that would establish this. Indeed, plaintiff admits that it does not know what specific services are offered by defendant, but claims that it will become apparent, after formal discovery, that telecommunications services are being offered.  Plaintiff's reliance upon the uncertain results of discovery is misplaced.  "[I]f … the primary jurisdiction doctrine applies on any set of facts that could be developed by the parties, there is no reason to await discovery, summary judgment, or trial and the application of the doctrine properly may

be determined on the pleadings." Davel Communications, Inc. v. Qwest Corp., 460

F.3d 1075, 1089 (9th Cir.2006).  The classification of the disputed services offered by

defendant has already been raised and discovery will not dissipate the need to resolve

this issue.

Plaintiff's reliance on the possibility that it will be able to recover on its claim

while avoiding any issues that implicate the FCC's primary jurisdiction is also

misplaced.   Referral under the primary jurisdiction doctrine is issue based, not claim

based. See Alpharma, Inc., 411 F.3d 934; Verizon Northwest, Inc. v. Portland General

Elec. Co., 2004 WL 97615 (D. Or. 2004); Splitrock Properties, Inc. v. Qwest

Communications Corp., Slip Copy, 2010 WL 2867126 (D. S.D. 2010) ("[P]rimary

jurisdiction referral does not refer entire *claims* to the FCC.  Rather, such a referral

seeks the FCC's guidance on *issues* within its expertise." Id. at *9 (emphasis in

original)).   Moreover, even if one or more of defendant's services satisfies the

definition of  telecommunications services, the Court will be unable to access total

damages without first determining specifically what services, and what mis-reported

attachments, should be included.   This is an instance where "[a]ffording the

opportunity for administrative action will 'prepare the way, if the litigation should take

its ultimate course, for a more informed and precise determination by the Court…"

Ricci v. Chicago Mercantile Exchange, 409 U.S. 289, 305 (1973) (*quoting* Federal

Maritime Bd. v. Isbrandtsen Co., 356 U.S. 481, 498 (1958)).

The classification of the services offered by defendant satisfies the two factors

to be considered in applying the primary jurisdiction doctrine: (1) area of agency

expertise and (2) promotion of uniformity and consistency. See Alpharma, 411 F.3d

at 938. First, the classification of cable based information or telecommunications

services involves a technical factual inquiry that is outside of the traditional expertise of this Court. Cf. American Telephone and Telegraph Co. v. F.C.C., 454 F.3d 329, 372 (D.C. Cir. 2006) (upholding FCC determination that IP-based prepaid calling card service was telecommunications; FCC could make its rules retroactive). This classification issue has often served as a basis for invoking the primary jurisdiction doctrine and cannot be determined merely by the label affixed by either party to the disputed service. See Southwestern Bell Telephone, L.P. v. VarTec Telecom, Inc., 2005 WL 2033416 (E.D.Mo., August 23, 2005) (Not Reported in F.Supp.2d); Splitrock Properties, Inc., 2010 WL 2867126. Despite plaintiff's representations, the Court does not believe that any of the specific services plaintiff points to on defendant's website ---VoIP, dedicated line business data transport, and E-rate services---can be easily classified under prior FCC precedent. See Judith A. Endejan, Will the FCC Ever Make the Call on VOIP SERVICE?, 25-FALL COMM. LAW. 4 (2008).  The Court need not examine the case law and precedent as it relates to the classification of each of these types of service.  It is enough that one service addressed by plaintiff's complaint implicates the primary jurisdiction doctrine.  Splitrock Properties, Inc., 2010 WL 2867126; Davel Communications, 460 F.3d 1075.

Second, the classification of the services offered by defendant has far-reaching consequences that concern the "promot[ion] of uniformity and consistency" in the regulatory scheme promulgated by the FCC.  Alpharma, 411 F.3d at 938; See also Endejan, 25-FALL COMM. LAW. 4 (discussing the implications of FCC classification of emerging IP-enabled services).  As recently noted by the FCC,

> The Commission is considering the appropriate regulatory treatment of
> IP-based services . . . in a number of open proceedings.[FN15] The
> requested waiver will serve the public interest by permitting the

> Commission to address the appropriate regulatory treatment of IP-originated traffic in a more comprehensive manner before addressing more detailed issues . . .

Federal Communications Commission, In the Matter of At&T Inc. Petition for Waiver of Section 61.42(G) of the Commission's Rules, 26 F.C.C.R. 7798, 2011 WL 2169125 (June 2, 2011).  The classification of services offered by defendant affects not only the parties' obligations under their agreement, but also the treatment of the services and parties throughout the entire regulatory scheme overseen by the FCC.  The FCC considers many competing policy goals and issues of a highly technical nature in determining where a specific service fits within this regulatory scheme.  A classification determination in this Court would risk inconsistency within in this rapidly changing area of regulation.

The FCC's issuance of new regulations governing pole attachments on April 7, 2011 provides further support for application of the primary jurisdiction doctrine. Federal Communications Commission, In the Matter of Implementation of Section 224 of the Act, 26 F.C.C.R. 5240, 2011 WL 1341351, (F.C.C. 2011) ("April 7th order"). In the April 7th order, the FCC revised the telecommunications rate formula to substantially eliminate the difference between the cable and telecommunications maximum reasonable rates.  While the  order did not make the rate change retroactive, it affirmed the FCC's "sign and sue" policy of encouraging the parties to sign an agreement then challenge the specific terms for reasonableness in a complaint to the FCC.  Id.   The April 7th order also bolstered the pre-complaint dispute resolution requirements, "revising Commission rule 1.1404(k) to require that there be 'executive-level discussions' (i.e., discussions among individuals who have sufficient authority to make binding decisions on behalf of the company they represent) prior to

the filing of a complaint at the Commission."   26 F.C.C.R. at 5286; 47 C.F.R. §
1.1404(K).  While the April 7th order does not directly address the service classification
issue raised here, it demonstrates the FCC's increasing involvement in pole attachment
disputes and the need for consistent interpretation and application of these newly
issued rules.

Finally, the Court finds that a stay of proceedings, as opposed to dismissal
without prejudice, is appropriate.  Plaintiff would be "unfairly disadvantaged" by the
dismissal of its complaint because it may need to seek further relief from this Court on
its underlying breach of contract claim and a dismissal without prejudice will not toll
the statute of limitations while its FCC complaint is pending.  Access, 137 F.3d at 609
(citing Reiter v. Cooper, 507 U.S. 258, 269 (1993));  Southwestern Bell Telephone,
L.P. v. Vartec Telecom, Inc., 2008 WL 4948475 (E.D.Mo. 2008).

IV.    Conclusion

For the reasons discussed above, the Court finds that referral under the primary
jurisdiction doctrine is appropriate.

Accordingly,

IT IS HEREBY ORDERED the defendant's motion to stay proceedings in this
matter [Doc. #10] is granted.

IT IS FURTHER ORDERED that defendant's motion to dismiss the  complaint
[Doc. #10] is denied.

IT IS FURTHER ORDERED that this matter is stayed pending (1) a
determination by the Federal Communications Commission of the issues raised in
plaintiff's complaint; (2) resolution of the dispute by agreement of the parties; or (3)
further order the Court.

**IT IS FURTHER ORDERED** that plaintiff shall file a status report within six months of the date of this order or upon determination by the Federal Communications Commission of its petition, whichever is earlier.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 27th day of September, 2011.